UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

J.B., a minor, by and through her parent and natural guardian Tereia Duff ; J.M., a minor, by and through his parent and natural guardian Nicole Smith, on behalf of themselves and all others similarly situated,

        Plaintiffs,

    v.

ONONDAGA COUNTY; RYAN MCMAHON, Onondaga County Executive, in his official capacity; EUGENE CONWAY, Onondaga County Sheriff, in his official capacity.

        Defendants.

**CLASS ACTION COMPLAINT**
5:19-cv-137 (LEK/TWD)

---------------------------------------------------------------x

## PRELIMINARY STATEMENT

1. The ability of an individual charged with a crime to consult privately and without inhibition with his or her attorney is fundamental to the right to counsel under the Sixth Amendment and indispensable to a fair and equitable justice system. At the Youth Part of the City of Syracuse Criminal Courthouse

("Courthouse" or "Youth Part"), adolescent and juvenile offenders ("Plaintiffs" or "teenagers") are denied that fundamental right.

2. As a matter of policy, Onondaga County Sheriff's Deputies and Syracuse City Police Officers (collectively "law enforcement") refuse to leave the only interview room available for Plaintiffs and their attorneys to meet prior to arraignment. This policy makes it impossible for Plaintiffs to meaningfully communicate with their attorneys.

3. Sheriff's Department personnel also refuse to leave the interview room when Plaintiffs remanded to Hillbrook Juvenile Detention Facility ("Hillbrook") seek to privately consult with their attorneys before or after any post-arraignment appearance.

4. Pointing to the unconstitutionality of the policy, Plaintiffs' counsel, the Onondaga County Assigned Counsel Program, and several defense attorneys requested that Defendants stop interfering with Plaintiffs' right to consult privately with their attorneys and provide a confidential meeting space for them to meet with their clients within the Courthouse. Defendants have not changed the policy or otherwise accommodated Plaintiffs' right to consult privately with their attorneys.

5. The Defendants have violated and continue to violate the Plaintiffs' rights under the Sixth and Fourteenth Amendments to the U.S. Constitution. The plaintiffs seek declaratory and injunctive relief ending the unconstitutional policies and practices of the Defendants.

## PARTIES

**The Named Plaintiffs**

6. J.B. is a 16-year-old girl who was arraigned at Syracuse City Courthouse in early January 2019. She appears in this action through her mother and guardian Tereia Duff.

7. J.M. is a 16-year-old boy remanded to Hillbrook Juvenile Detention Facility and currently has a case in the Youth Part. He appears in this action through his mother and guardian Nicole Smith.

**The Defendants**

8. Eugene Conway is the Sheriff of Onondaga County and head of the Onondaga County Sheriff's Office, the law enforcement department of Onondaga County. Sheriff Conway is an elected official, and has final policy-making authority for all policies that govern the Civil, Corrections, Custody, and Patrol units of the Sheriff's Office. Sheriff Conway also has supervisory authority over all Sheriff's Office staff and is personally involved in authorizing and maintaining the unconstitutional policies and customs challenged by Plaintiffs. Sheriff Conway is sued in his official capacity.

9. Ryan McMahon is the County Executive for Onondaga County. Mr. McMahon is the chief executive for Onondaga County, and as such is responsible for the management of all county owned properties including the City of Syracuse Criminal Courthouse. He is personally involved in authorizing, maintaining, and

enforcing the unconstitutional policies and customs challenged by Plaintiffs. Mr. McMahon is sued in his official capacity.

10. Onondaga County is a municipal corporation and political subdivision of the State of New York, and is responsible for promulgating and enforcing the unconstitutional policies and customs challenged by Plaintiffs. Onondaga County owns and manages the Syracuse City Criminal Courthouse located at 505 S. State St. Syracuse, New York 13202. Onondaga County is responsible for the upkeep, maintenance, operations, and renovations of County-owned court facilities. Onondaga County is also responsible for developing a plan to comply with New York's Raise the Age legislation and responsible for ensuring a system is in place that gives criminal defendants meaningful access to counsel.

## JURISDICTION AND VENUE

11. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

12. This Court has jurisdiction to issue the declaratory relief requested pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201 and 2202. This Court may also grant injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure. This Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988.

13. Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Defendants have their official residence in the

Northern District of New York. A substantial part of the events and omissions giving rise to the claims in this action occurred in this district.

## FACTS

### *Background*

14. On April 10, 2017, Governor Andrew Cuomo signed into law "Raise the Age" legislation. The law raises the presumptive age of criminal responsibility to eighteen years. It is effective for sixteen-year-olds on October 1, 2018, and seventeen-year-olds on October 1, 2019.

15. Raise the Age requires each County to create a "Youth Part" in that county to handle cases involving adolescent and juvenile offenders. N.Y. Crim. Proc. Law § 722.10. The Youth Part for Onondaga County is housed in the City of Syracuse Criminal Courthouse and presided over by the Honorable Vanessa Bogan, Syracuse City Court Judge.

16. Currently all sixteen-year-olds charged with a felony ("adolescent offenders"), and thirteen-, fourteen- or fifteen-year-olds who are accused of committing a "serious crime" as defined under New York State Law ("juvenile offenders") have their cases initially heard in the Youth Part. N.Y. Crim. Proc. Law § 722.10. Following their arraignment, juvenile and adolescent offenders' cases are eligible for transfer to Family Court. N.Y. Crim. Proc. Law § 722.21-22. If the teenager's case is not removed to Family Court, it remains in the Youth Part until disposition.

### *Full and Open Communication is Critical in Developing a Successful Attorney-Client Relationship*

17. All juvenile and adolescent offenders are entitled to counsel at their arraignment. The pre-arraignment meeting between counsel and the defendant is one of the most critical phases of the criminal process. The attorney must establish trust, begin to build the attorney-client relationship, gather crucial information, and help his or her client to make important decisions.

18. The American Bar Association Criminal Justice Standards, the National Legal Aid and Defender Association's Performance Guidelines for Criminal Defense Representation, and the New York State Bar Association Committee on Children and the Law all emphasize the importance of trust as well as open and effective communication to building a successful attorney-client relationship.

19. During the pre-arraignment interview, defense attorneys must (i) gather information to prepare for the bail review; (ii) assess the strength of the prosecution's case; (iii) identify defenses and witnesses; and (iv) consider potential procedural violations by law enforcement that could lead to the suppression of evidence.

20. The New York State Bar Association Committee on Children and the Law recommends that attorneys discuss the young client's family, social, health, education, and legal history in the pre-arraignment interview.[1]

21. This single interview informs decisions throughout the case including: framing arguments for bail and arguments for dismissal; deciding on discovery

---

[1] "Standards for Attorneys Representing Children in Juvenile Delinquency Proceedings", New York State Bar Association Committee on Children and the Law (2015), (available at: https://www.nysba.org/WorkArea/DownloadAsset.aspx?id=55896).

notices and demands; and determining the appropriateness of the client's testifying or offering evidence to the grand jury.

22.     Private and meaningful communication is equally important after arraignment.  Among other things, defendants need to discuss proposed plea agreements, prepare for appearances, discuss discovery to be sought and reviewed, and react to other developments in the case.

23.     Maintaining a relationship of confidence and trust is important in all criminal representations, but is especially important for adolescents and juveniles. As the Supreme Court has recognized, juveniles and adolescents do not possess the same cognitive, emotional, decision-making or behavioral capacities as adults. Because of these differences, additional time and care are necessary to guide teenagers through the criminal justice process.

## *Defendants' Unconstitutional Policies Deny Teenagers Access to Counsel*

24.     In the Youth Part of the Syracuse City Criminal Courthouse, at least one law enforcement officer stays in the interview room when the teenager first meets his or her attorney.  The law enforcement officer stays in the room throughout the interview, refusing to leave even when defense counsel objects to the officer's presence. Oftentimes the law enforcement officer was also the arresting officer.

25.     Whether the teenager is arrested by the Sheriff's Office or the Syracuse Police Department, an officer stays with the teenager until he or she has been arraigned.

26. Law enforcement personnel ignore attorneys' protests about their presence in the interview room and refuse to leave the interview room even in the face of an attorney's demand to do so.

27. The Sheriff's Office's interference with the ability of teenagers to privately communicate with counsel continues after arraignment.

28. Teenagers remanded to Hillbrook are transported to future Court appearances by Sheriff's Office transport deputies. If the teenager's case remains in the Youth Part, there is no opportunity for a private meeting with the defense attorney in the Courthouse. It is Sheriff's Office policy that transport deputies remain in the interview room at all times.

29. If the Sheriff's Office transports more than one teenager to Court, it routinely shackles the teenagers together, refusing to unshackle them to allow private meetings with attorneys and thus further inhibiting attorneys' ability to confer privately with their clients.

30. Prior to implementation of Raise the Age on October 1, 2018, several meetings were held that included representatives of the Syracuse Police Department, Onondaga County Sheriff's Office, District Attorney's Office, Onondaga County Bar Association Assigned Counsel Program, Onondaga County Probation, and the New York State Court System. At those meetings, the presence of law enforcement during attorney-client meetings held at the Courthouse was discussed. Defendants took no action to ensure Plaintiffs had a private place to meet with their attorneys.

31. Law enforcement officers are not present in the interview room when defense attorneys interview their adult clients prior to their arraignment at the Syracuse Criminal Courthouse, or during interviews before after-hours arraignments in town and village courts

***Defendants' Policies Result in an Unreasonable Burden to Plaintiffs' Ability to Communicate with their Attorney and Strikes at the Heart of the Right to Counsel***

32. The New York State Office of Court Administration guidelines for state court facilities states that "[f]unctions which require a considerable degree of confidentiality—such as . . . attorney/defendant interviews . . . – should be housed in private rooms." 22 N.Y. Comp. Codes R. & Regs. § 34.0 (III)(9). Onondaga County bears the responsibility that these guidelines are met.

33. Plaintiffs' ability to communicate with their attorneys is unreasonably burdened as a direct result of Defendants' failure to make accommodations that maintain privacy in attorney-client interviews.

34. The criminal justice system is complicated and difficult for anyone to understand, and even more so for a child. Open and private communication is therefore essential throughout the process to keep the accused apprised of proceedings that put their freedom at risk. Defendants' policies prevent Plaintiffs from privately asking questions of their attorneys and discussing important case decisions.

35. Attorneys are forced to tell their clients not to discuss the facts related to their arrest in this non-confidential setting. This means Plaintiffs cannot share

with their attorneys potentially mitigating facts, relevant personal information including disabilities or traumas they have suffered, or information concerning potential alibi or complaining witnesses.

36. Law enforcement personnel routinely make comments to the teenagers and their attorneys during interviews about their cases. On at least one occasion a Syracuse Police Department ("SPD") intern took notes on everything the attorney and client said during the interview.

37. Defendants' policies not only render the Sixth Amendment's guarantee of assistance of counsel meaningless by destroying confidentiality, they also irreparably damage the attorney-client relationship by chilling Plaintiffs' willingness to discuss their case with their assigned attorney.

38. Young people under arrest can be expected to be confused, afraid, and frustrated. Prior to arraignment, a teenage defendant meets his or her attorney --- someone the teenager likely does not know and did not choose --- for the first time. Law enforcement's refusal to leave the interview room, and the County's failure to offer any accommodations to ensure attorney-client confidentiality, makes open and full attorney-client communication impossible and irreparably harms the attorney-client relationship at its outset.

39. If teenagers feel inhibited from speaking openly with their attorneys, they are unlikely to be forthcoming with information that may be relevant to the case or that could result in severe collateral consequences such as their immigration status.

40. Trust between attorney and client is essential for effective representation. Building trust is often an uphill battle for assigned criminal defense attorneys. Studies have shown clients often express distrust of assigned defense attorneys because they are provided by the state and viewed as part of the system that is working against the client.[2] Defendants' policies poison the environment necessary for an attorney to build a trusting attorney-client relationship.

41. Recognizing the harm confinement in detention facilities inflicts on juveniles and adolescents, the Raise the Age legislation includes a presumption against detention. N.Y. Crim. Proc. Law § 722.23(1)(F). Teenagers held in pre-trial detention are more likely to be convicted and less likely to be offered the opportunity to plea to a lesser charge.[3]

42. By failing to allow defense attorneys a private opportunity to gather all the information necessary to contest pretrial detention, the Defendants undermine the statutory presumption against pretrial detention and increase the likelihood of a poor outcome for Plaintiffs' cases, because an uninformed attorney is not adequately prepared to contest remand.

---

[2] Christopher Campbell et al., *Unnoticed, Untapped, and Underappreciated: Clients' Perceptions of their Public Defenders,* 33 Behav. Sci. & L. 751, 763 (2015); Jonathan D. Casper, *Did You Have a Lawyer When You Went to Court? No, I Had a Public Defender*, 1 Yale Rev. L. & Soc. Action 4, 7 (1971).

[3] Mary T. Phillips, Ph.D., *Pretrial Detention and Case Outcomes, Part 2: Felony Cases*, Final Report, New York City Criminal Justice Agency, Inc. (2008), at 58.

43. Plaintiffs have been irreparably harmed and will continue to be irreparably harmed as a result of Defendants' policies and customs.

44. All actions or inactions taken by Defendants are under color of state law.

## INDIVIDUAL ALLEGATIONS

**Named Plaintiff J.B.**

45. J.B. is a 16-year-old female who was arrested in early January 2019. She was held for several hours before being transported to the Courthouse for arraignment.

46. Upon arriving at the Courthouse she was brought to a holding cell and then into a room with a long table and four chairs. The room had one door. Both police officers who arrested her sat at the table with her. They eventually told her that her lawyer was coming to see her.

47. When J.B.'s attorney arrived, the police officers remained seated at the table and refused to leave to allow the attorney and client to meet privately.

48. J.B. was confused why the officers stayed in the room when her attorney tried to meet with her. She did not really understand what was happening or what would happen in front of the Judge. She was too nervous to ask questions.

49. Before leaving the room, J.M's defense attorney asked one of the detectives if she had provided a statement and the detective stated he had "no information on the case."

50. Based on Defendants policies and practices, J.B. was unable to have a meaningful meeting with her attorney prior to her arraignment.

51. From J.B's mother her attorney found that J.B. has no criminal record, no bench warrant history, no passport, no assets, and is enrolled in high school. Further, the charging documents did not allege serious or significant injury resulting from J.B.'s alleged conduct. Relying on only this basic information because of the lack of a private meeting space, J.B.'s attorney requested pre-trial release.

52. The same police officer who had previously told the defense attorney he had "no information on the case" claimed in open Court that there was a chance the injury might be more serious than set forth in the paperwork. The officer was not placed under oath prior to giving his statement and the attorney was not allowed to cross-examine the police officer.

53. J.B.'s attorney had no information to refute the police officer's claims because she was unable to privately meet with her client prior to the appearance.

54. J.B. was confused about what was going on throughout this whole process.

55. The Assistant District Attorney requested fifty-thousand-dollars cash or bond. The Judge, relying on the unsworn testimony of the police officer denied pre-trial release. The Judge set bail at five-thousand-dollars. J.B. was remanded to Hillbrook.

56. J.B.'s mother works part time and has three other children so she was unable to come up with the money to bail J.B. out.

57. At her next Court appearance in the Youth Part, the State delivered a certificate of indictment. J.B. was once again denied the opportunity to meet privately with her attorney at the Courthouse. The Judge again denied J.B.'s pre-trial release request.

58. Concerned about her daughter's continued confinement at Hillbrook J.B.'s mother gathered the money she could and borrowed the rest of the bail money. J.B. was at Hillbrook for six days before her mother was able to bail her out.

**Named Plaintiff J.M.**

59. J.M. was arrested after 11 p.m. in late December 2018 at his mother's home in the City of Syracuse. SPD officers then took J.M. to the Criminal Investigations Division of the SPD where they held him for transportation to the Town of Geddes for his after-hours arraignment.

60. At the Town of Geddes Courthouse, J.M. was able to meet privately with his attorney in a room prior to his appearance before the Judge.

61. Following J.M.'s initial appearance, he was remanded to Hillbrook. Because of his age at the time of his arrest, and the charges he faced, the law required that future appearances be in the Youth Part absent a transfer to Family Court.

62.     For J.M.'s next appearance Sheriff's Office transport deputies brought him to the Youth Part shackled around his ankles, waist, and wrists.  At the Courthouse the deputies placed J.M. in a holding cell.  Eventually his name was called and he was escorted to a room to meet with his attorney. The room had one door  and a long table with chairs

63.     The deputy who escorted J.M. to the room entered behind him and closed the door.

64.     J.M.'s attorney requested that the deputy leave the room, but the deputy refused.

65.     J.M. did not feel comfortable with the Sheriff's Deputy in the room.  He thought the deputy would be listening to everything he said and then try to use it against him later.  He was unsure of what he should say, if anything.

66.     J.M. was confused by the purpose of the Court appearance but was not comfortable asking questions.  His attorney did her best to explain what would happen despite there being a deputy in the room. It became obvious the deputy was listening in to their conversation when the deputy made a comment that the proceeding he was about to attend was "no big deal."

67.     At first it was difficult for J.M. to know if he could trust his attorney because he saw her as part of law enforcement.

68.     At J.M.'s next appearance in the Youth Part, he was again subjected to Defendants' unconstitutional policies. The Sheriff's deputy remained in the interview room when he met with his attorney, and again the deputy refused to

leave. J.M. again had questions about the appearance, but he was uncomfortable asking because the deputy was in the room.

69. J.M. remains in custody at Hillbrook with a case pending before the Youth Part.

## CLASS ALLEGATIONS

70. All Plaintiffs bring the First Cause of Action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking declaratory and injunctive relief on behalf of a class of all adolescent and juvenile offenders, as the terms are defined under New York State Law, who are now, or will be, in the custody of law enforcement and appear before the designated Onondaga County Youth Part. All class members face an unreasonable burden on their ability to communicate with their attorneys and are deprived of attorney-client confidentiality as a result of Defendants' policies and practice.

71. All four requirements of rule 23(a) are satisfied:

    a. *Numerosity*: Joinder of all class members is impracticable because of the size of the class and the characteristics of the class members. In 2017, 103 sixteen-year-olds and 104 seventeen-year-olds were arrested for felonies in Onondaga County. Every month, additional class members are arrested and arraigned and therefore subject to the policies and practices challenged by Plaintiffs. Many of these juveniles and adolescents are unable to file lawsuits on their own because of their youth, disabilities, lack of financial resources, and short duration of their detention.

      b.    *Commonality*: There are questions of law and fact common to all members of the class, including, but not limited to whether the Defendants' policies and practices unreasonably burden Plaintiffs' ability to communicate with their attorneys.

      c.    *Typicality*: The claims of the named Plaintiffs are typical of those of the class. Each named Plaintiff has been subjected to the challenged policies and practices.

      d.    *Adequacy of Representation*: The named Plaintiffs, their representatives, and class counsel will fairly and adequately represent the interests of the class. The named Plaintiffs and their representatives have no interests in this matter that are antagonistic to other class members. Class counsel has many years of experience in civil rights and class action litigation.

72.    Class-wide declaratory and injunctive relief are appropriate under rule 23(b)(2) because the Defendants have acted or refused to act on grounds generally applicable to the class as a whole.

## CLAIMS FOR RELIEF

### First Cause of Action

73.    The Defendants' actions or inactions, made under color of State law, have violated and continue to violate the named Plaintiffs' and putative class members' rights under the Sixth Amendment and Fourteenth Amendment of the United States Constitution.

## **REQUESTS FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request that this Court:

a. Declare that Defendants' acts and omissions violated the named Plaintiffs' and class members' rights under the Sixth and Fourteenth Amendments;

b. Enter all necessary and appropriate injunctive relief to end the ongoing violations of the U.S. Constitution;

c. Award the Plaintiffs reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

d. Grant any other relief that the Court deems necessary and proper.

Dated: February 1, 2019
      Syracuse, New York

Respectfully submitted,

/s/ Joshua Cotter
Joshua Cotter (Bar No. 518217)
Samuel Young (Bar No. 508916)
LEGAL SERVICES OF
CENTRAL NEW YORK
221 S. Warren Street, 3rd Floor
Syracuse, NY 13202
Tel: (315) 703-6500
jcotter@lscny.org

*Attorneys for Plaintiffs*